Gregory O. PAYTON, Plaintiff,

v.

NORDSTROM, INC., Defendant.

No. 1:06CV388.

United States District Court,
M.D. North Carolina.

Sept. 12, 2006.

Gregory O. Payton, Durham, NC, pro se.

James B. Spears, Jr., John D. Cole, Ogletree Deakins Nash Smoak & Stewart, P.C., Charlotte, NC, for Defendant.

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

WALLACE W. DIXON, U.S. Magistrate Judge.

Before this court is Defendant Nordstrom's motion to compel arbitration and for a stay pending arbitration or, alternatively, for dismissal of this action (docket no. 8). Pro se Plaintiff Gregory Payton has not responded to the motion and the time to do so passed. The parties have not consented to the jurisdiction of the magistrate judge; therefore, the motion must be addressed by way of recommendation. For the following reasons, it will be

recommended that the court grant Defendant's motion to dismiss.

## I. Background

On September 8, 2003, Plaintiff filed this pro se lawsuit in Durham County Superior Court against his former employer Nordstrom, alleging "harassment," "wrongful termination," and "racial discrimination." (*See* Complaint attached to Notice of Removal.) Defendant removed the case to this court based on federal question jurisdiction.[1] Defendant then filed the pending motion for a stay and to compel arbitration pursuant to 9 U.S.C. §§ 3 and 4 of the Federal Arbitration Act (FAA), or alternatively, for dismissal. Defendant contends that Plaintiff agreed at the outset of his employment with Defendant, and as a term and condition of his employment, that he would arbitrate his claims. For the following reasons, the court agrees that Plaintiff's claims are subject to binding arbitration.

## II. Facts

Plaintiff worked as an employee for Defendant Nordstrom from December 22, 2003, until his employment was terminated on August 22, 2005. On December 15, 2003, Plaintiff completed an application for employment with Defendant Nordstrom. (Olson Aff. ¶ 2.) Directly above his signature, the application informs employees about "Nordstrom's Dispute Resolution Program" and states:

> Nordstrom uses a dispute resolution program to resolve many disputes and claims between Nordstrom employees and the Company and its agents. This means that certain disputes and claims must be resolved through … final and binding arbitration. Should you be employed by Nordstrom, you may not purse courtroom litigation as a means to resolve disputes or claims between you and the Company that are covered by the dispute resolution program. Your signature below acknowledges that you are aware of and agree to abide by the Company's dispute resolution program.

(Olson Aff. Ex. 3.) Nordstrom subsequently hired Plaintiff on December 22, 2003. (Olson Aff. ¶ 6.) At the beginning of Plaintiff's employment, Nordstrom gave Plaintiff a copy of the Nordstrom Dispute Resolution Program and an accompanying "Arbitration Agreement," and gave Plaintiff time to read the document and ask questions. (Olson Aff. ¶¶ 5–6.) Plaintiff signed the Arbitration Agreement and began working at Nordstrom's Streets of Southpoint store in Durham, North Carolina. (Olson Ex. 4.) In signing the agreement, Plaintiff attested that he **"KNOWINGLY AGREE[D] AND CONSENT[ED] TO ARBITRATE ANY COVERED CLAIM ARISING OUT OF [HIS] EMPLOYMENT RELATIONSHIP … INCLUDING BUT NOT LIMITED TO HARASSMENT AND DISCRIMINATION."** (Olson Aff. Ex. 4.) (emphasis in original). By signing the Arbitration Agreement, Plaintiff also acknowledged that it was a term and condition of employment and that his employment constituted consideration in exchange for his agreement to participate in arbitration through Nordstrom's Dispute Resolution Program. Specifically, the Arbitration Agreement states, in pertinent part:

---

**1.** Although Plaintiff does not specifically alleged a Title VII violation in the pro se Complaint, the Complaint refers to Plaintiff's previously filed Equal Employment Opportunity Commission ("EEOC") charge alleging racial discrimination under Title VII, thus forming the basis for Defendant's removal based on federal question jurisdiction. The Complaint also appears to allege a claim for wrongful discharge under North Carolina common law.

**I UNDERSTAND THAT I WOULD NOT BE OR REMAIN EMPLOYED BY NORDSTROM ABSENT SIGNING THIS AGREEMENT.** My signature below acknowledges I understand and agree that in consideration for my employment with Nordstrom, Inc., I agree to the Nordstrom Dispute Resolution Program.

(Olson Aff. Ex. 4.) (emphasis in original). Nordstrom's Dispute Resolution Program specifically states that employees:

must use the Nordstrom Dispute Resolution Program instead of a court proceeding, including a jury trial, to resolve covered claims against Nordstrom . . . that arise from or are in any way connected with . . . [their] employment.

(Olson Aff. Ex. 2.) The program also identifies, under the heading "Claims Covered," the specific categories of employment disputes that are subject to mandatory arbitration, including the following:

Claims of harassment . . . discrimination (including, but not limited to, claims based on race . . .), or retaliation, whether such claims arise under Title VI I of the Civil Rights Act of 1964 [or other federal laws] . . .

. . . .

Claims for discharge in violation of common law, statute, regulation or ordinance (wrongful termination), including, but not limited to, retaliatory discharge claims . . .

(Olson Aff. Ex. 2).

## III. Discussion

■ The FAA, 9 U.S.C. §§ 1–14, reflects a "liberal federal policy favoring arbitration agreements" as a means of settling disputes. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). Underlying this policy is Congress's view that arbitration constitutes a more efficient dispute resolution process than litigation. *Hightower v. GMRI, Inc.*, 272 F.3d 239, 241 (4th Cir.2001). Accordingly, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration."[2] *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475–76, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). The FAA, 9 U.S.C. § 3, requires a court to stay "any suit or proceeding" pending arbitration of "any issue referable to arbitration under an agreement in writing for such arbitration." Thus, under the FAA, where a valid arbitration agreement exists and where the claims fall within the scope of the agreement, a court must grant a motion to compel arbitration. *United States v. Bankers Ins. Co.*, 245 F.3d 315, 319 (4th Cir.2001). Moreover, the Fourth Circuit has held that, despite the language of the FAA regarding a stay of arbitration, when all of the claims in a lawsuit are required to be arbitrated, dismissal, rather than a stay, is a proper remedy. *Choice Hotels, Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir.2001).

■ Since Plaintiff has not responded to Nordstrom's motion to compel arbitration,

---

**2.** North Carolina also has a strong public policy favoring the settlement of disputes by arbitration. *Johnston County, N.C. v. R.N. Rouse & Co.*, 331 N.C. 88, 91, 414 S.E.2d 30, 32 (1992). Indeed, North Carolina courts have stated that "where there is any doubt concerning the existence of an arbitration agreement, it should be resolved in favor of arbitration." *Martin v. Vance*, 133 N.C.App. 116, 120, 514 S.E.2d 306, 309 (1999).

this court could treat the motion as uncontested and grant it without further notice. The court has, nevertheless, decided to address the merits and concludes that Defendant has shown with crystal clarity that Plaintiff signed a legally binding Arbitration Agreement when he began his employment with Nordstrom. Moreover, Plaintiff's claims alleging discrimination, harassment, retaliation, and wrongful termination are all clearly covered under the Arbitration Agreement.[3] Thus, Plaintiff is clearly required to arbitrate the claims brought in this lawsuit. Instead of ordering a stay and compelling arbitration, however, the court should grant Defendant's alternative motion to dismiss so that Plaintiff may submit his claims to mandatory, binding arbitration if he chooses to do so. *Webb v. Harris*, 378 F.Supp.2d 608, 613 (M.D.N.C.2005) (where all of plaintiff's claims are sent to arbitration dismissal is an appropriate result).

## IV. Conclusion

For these reasons, it is **RECOMMENDED** Defendant's alternative motion to dismiss (docket no. 8) be **GRANTED**.

### JUDGMENT

OSTEEN, District Judge.

On July 20, 2006, the United States Magistrate Judge's Recommendation was filed and notice was served on the parties pursuant to 28 U.S.C. § 636(b). No objections were received by the court within the time prescribed by the statute.

The court hereby adopts the Magistrate Judge's Recommendation.

**IT IS HEREBY ORDERED AND ADJUDGED** that Defendant's alternative motion to dismiss (docket no. 8) be **GRANTED.**

---

**3.** Courts apply state contract law principles to determine whether the parties agreed to arbitrate. *Hightower*, 272 F.3d at 242. Because Plaintiff signed the Arbitration Agreement in North Carolina, North Carolina law controls in this case. *See Fortune Ins. Co. v. Owens*, 351 N.C. 424, 428, 526 S.E.2d 463, 466 (2000) (holding that in North Carolina, the law governing a contract claim is lex loci contractus, or the law of the place where the contract was formed).